AF Approval ⟨N⟩                           Chief Approval ⟨signature⟩

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                          CASE NO. 8:21-cr-6-T-35AAS

KEITH NICOLETTA

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Maria Chapa Lopez, United States Attorney for the Middle District of Florida, and the defendant, Keith Nicoletta, and the attorney for the defendant, Bjorn Brunvand, mutually agree as follows:

**A.**   **Particularized Terms**

    1.   **Count Pleading To**

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with money laundering conspiracy, in violation of 18 U.S.C. § 1956(h).

    2.   **Maximum Penalties**

Count One carries a maximum sentence of twenty years' imprisonment; a fine of up to $500,000, or twice the value of the property involved in the transaction, whichever is greater; a term of supervised release of up to five years; and a special assessment of $100.

Defendant's Initials ⟨initials⟩

3.      Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

> First:      two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1956; and
>
> Second:   the defendant knew about the plan's unlawful purpose and voluntarily joined in it.

4.      Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.      No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the facts described in this plea agreement.

6.      Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a), defendant agrees to make full restitution to the victims of the conspiracy described in Count One, in the approximate amount of $1,903,157 to be paid jointly and severally with his

Defendant's Initials _____                2

coconspirators. The defendant acknowledges that the final restitution amount will be determined by the Court at the time of sentencing.

7.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not

Defendant's Initials _____   3

accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a

Defendant's Initials _____                4

full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and

Defendant's Initials _____

5

the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

11.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and

Defendant's Initials _____   6

unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges, which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court,

Defendant's Initials _____     7

prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the

Defendant's Initials           8

United States, the United States may move the Court to declare this entire plea agreement null and void.

12.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(1), whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $1,903,157, in proceeds the defendant obtained and laundered as a result of the commission of the offense to which the defendant is pleading guilty, as well as the following assets which were involved in the offense:

    a.    a 2020 Mercedes-Benz S560, Vehicle Identification Number W1KUG8DB8LA529322;

    b.    a 2020 Ford Super Duty F-250 Platinum Edition, Vehicle Identification Number 1FT7W2BT9LED45745;

    c.    a Rolex watch purchased by the defendant in or about July 2020 from Mayors Jewelers;.

    d.    Approximately $40,335.00 in U.S. Currency seized from 11248 Mansker Road, Dade City, Florida on or about October 20, 2020;

Defendant's Initials _____    9

e.  Approximately $96,139.32 seized from San Antonio
    Federal Credit Union account number 59274-000, held in
    the name of Keith W. Nicoletta; and

f.  the real property, including all improvements thereon and
    appurtenances thereto, located at 11248 and 11304
    Mansker Road, Dade City, Florida 33525, being the same
    premises conveyed to Keith Nicoletta by virtue of the deed
    recorded on August 12, 2019, Instrument Number
    201935559, in Pasco County, Official Records, Book 9954,
    Pages 508 through 514;

    Parcel ID: 09-25-21-0000-05600-0000;
    Parcel ID: 09-25-21-0000-05600-0010; and
    Parcel ID: 09-25-21-0000-05600-0020.

The defendant agrees to voluntarily surrender the 2020 Mercedes-Benz and
2020 Ford Super Duty F-250 identified above to the Federal Bureau of
Investigation within 30 days of executing this agreement.  The defendant
further agrees to take all steps necessary to assist the United States in obtaining
clear title to these vehicles, including surrendering title and/or signing any
other documents necessary to effectuate such transfers.

The defendant acknowledges and agrees that: (1) the defendant
obtained and personally participated in laundering at least $1,903,157 in

Defendant's Initials                     10

proceeds as a result of the commission of the offense, and (2) as a result of the acts and omissions of the defendant, these proceeds have otherwise been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained and laundered, directly or indirectly, as the result of the offense of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained and laundered from commission of the offense. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence. The net proceeds from the forfeiture and sale of any specific asset(s) will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

Defendant's Initials _____      11

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's

Defendant's Initials _____                12

sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant

Defendant's Initials                     13

may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.**    **Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. §

Defendant's Initials _____          14

3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials _____        15

3.    <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises

Defendant's Initials _____                16

that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.      Sentencing Recommendations

        It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement,

Defendant's Initials _____      17

or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

       7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

          The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground

Defendant's Initials _____    18

that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

        8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

        9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials _____     19

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant

Defendant's Initials                     20

pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

KEITH NICOLETTA owns a small salvage business known as West Coast Cores, LLC ("WCC") in Dade City, Florida. Apart from some independent contractors, WCC has no employees. Despite this, on or about June 2, 2020, NICOLETTA and his conspirators used WCC to fraudulently secure over $1.9 million in Paycheck Protection Program ("PPP") funds. WCC's PPP loan application, submitted using interstate wire transmission, falsely claimed that it had 69 employees with an Average Monthly Payroll

Defendant's Initials    21

demand of $761,263—or, annualized, $9,135,156. That was a lie. WCC had reported no wages for any employee for either 2019 or 2020. WCC, as NICOLETTA knew, simply had no employees then.

With no employees to pay, NICOLETTA and his conspirators laundered and then misused the PPP funds in an effort to conceal and disguise the nature, location and source of the funds. For NICOLETTA, this meant, among other things, using the funds to purchase a 2020 Mercedes-Benz S560 (valued at over $106,000), a 2020 Ford Super Duty F-250 Platinum Edition (valued at over $75,000), and a Rolex watch; moving the funds through and into a number of bank accounts owned or controlled by NICOLETTA or others, including account number 59274-000, held at San Antonio Federal Credit Union; and using the funds to make mortgage payments on his residence located at 11248 Mansker Road, Dade City, Florida, and towards the construction of a built-in pool for this residence. Additionally, NICOLETTA withdrew over $407,000 in cash, including approximately $40,335.00 which was seized from his residence on or about October 20, 2020. NICOLETTA also delivered additional cash to the conspirators and transferred at least $537,000 by wire to them through business fronts.

Defendant's Initials   22

*Background Regarding the PPP*

In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 emergency. Among its various provisions, the CARES Act authorized the Small Business Administration ("SBA") to guarantee loans under the PPP, and the full principal amount of the loans could qualify for forgiveness.

Borrowers were required to use PPP loan proceeds for enumerated purposes, including payroll costs, rent and utilities, and mortgage interest payments. Knowing misuse of PPP funds could subject the borrower to additional liability, such as charges for fraud.

Under the PPP, the maximum loan amount was the lesser of $10 million or an amount calculated using a payroll-based formula. The payroll-based formula looked at the borrower's aggregate payroll costs from the preceding twelve months for its employees. Once an average monthly payroll cost is established, the borrower multiplies that amount by 2.5 to arrive at the total maximum PPP loan amount.

*The PPP Application Process: the SBA Form 2483*

To apply for a PPP loan, potential borrowers would submit an SBA Form 2483 with supporting payroll documentation to a financial institution

Defendant's Initials ⟋⟋⟍       23

that administers the loan and serves as custodian of the funds. The supporting

payroll documentation could include—and, here, did include—payroll tax

filings submitted to the Internal Revenue Service ("IRS") (hereinafter, the

"IRS Form 941").

On the SBA Form 2483, an authorized representative must also make

several certifications about his business operations and related information.

Those certifications included, among other things, that the PPP funds would

be used to retain workers and to maintain payroll or pay other qualifying

expenses. The authorized representative must further certify that, should he

knowingly use the PPP funds for unauthorized purposes, the United States

could hold him legally liable, including for charges of fraud. Finally, the

following warning must be certified:

> I understand that knowingly making a false statement to obtain a
> guaranteed loan from SBA is punishable under the law, including under
> 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five
> years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by
> imprisonment of not more than two years and/or a fine of not more
> than $5,000; and, if submitted to a federally insured institution, under
> 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or
> a fine of not more than $1,000,000.

### WCC's False and Fraudulent PPP Loan Application

On or about May 30, 2020, the conspirators electronically submitted via

interstate wire transmission a false and fraudulent PPP loan application (*i.e.*,

the SBA Form 2483) for WCC. The SBA Form 2483 falsely claimed that

Defendant's Initials _____   24

WCC had 69 employees with a monthly payroll demand of approximately $761,263. Applying the payroll-based calculator, the conspirators requested approximately $1,903,157 in PPP funds—funds, they certified, that would purportedly cover payroll to retain its 69 employees. But WCC did not have 69 employees; it had none.

Without actual employees, the conspirators fabricated payroll tax records for WCC to justify the loan amount. Specifically, they created four bogus IRS Forms 941 for WCC for Q1–Q4 of 2019. These forms falsely claimed that WCC had reported over $9 million in wages to the IRS. But the IRS had no record of these forms.

Surveillance of WCC's stated business address—NICOLETTA's home—showed no salvage operation, let alone one requiring 69 employees. And records from the state of Florida showed no reported wages for WCC for 2019 or 2020. Instead, as NICOLETTA voluntarily admitted in a post-*Miranda* interview, WCC had no employees.

The false and fraudulent SBA Form 2483 also listed NICOLETTA as WCC's "authorized representative." As such, his electronic initials "K.N." were entered beside all required certifications, including that "the information provided in this application and the information provided in all supporting documents and forms [were] true and accurate in all material respects." But

Defendant's Initials _/M/_                    25

NICOLETTA then and there knew that material information on WCC's SBA Form 2483 was false.

*Transfers and Improper Use of PPP Funds*

On or about June 2, 2020, C.B., a bank located in Utah, disbursed $1,903,157 in PPP funds to WCC's bank account (-3127) at Credit Union-1 in the Middle District of Florida. C.B. was a financial institution, as defined in 18 U.S.C. § 20, insured by the Federal Deposit Insurance Company; it was also the entity utilized to administer the loan and the entity with custody and control of the funds.

Prior to the PPP deposit, the balance of WCC's account (-3127) was only $11.74. Almost immediately thereafter, NICOLETTA engaged in a series of intra-bank transfers between his personal and business banks accounts at Credit Union-1. First, on June 2, 2020 (*i.e.*, the day the PPP funds were disbursed), NICOLETTA transferred $1,000,000 from WCC's account (-3127) to his personal savings account (-1379). After yet additional transfers, on or about June 5, 2020, NICOLETTA moved approximately $1,846,000 into his personal checking account (-1405) using a cashier's check comprised almost exclusively of PPP funds.

In June 2020, NICOLETTA moved the PPP funds to a different credit union ("Credit Union-2"). On June 8, 2020, NICOLETTA transferred

Defendant's Initials _____ 26

$1,741,000 from Credit Union-1 to his personal account (-9858) at Credit Union-2 using another cashier's check. NICOLETTA then opened at least three new bank accounts for new business entities. None of these entities were mentioned on WCC's SBA Form 2483. NICOLETTA again repeatedly moved the PPP funds in another series of intra-bank transfers at Credit Union-2. In material part, these transfers were designed and implemented to conceal and disguise the nature, location, source, ownership, and control of the fraudulently-obtained loan proceeds. He also, as detailed later, used the PPP funds extensively for his own personal enjoyment and benefit. These dispositions fell well outside of the SBA's enumerated, authorized uses for PPP funds.

On or about August 19, 2020, NICOLETTA moved the remaining PPP funds (*i.e.*, approximately $411,000) to a third credit union ("Credit Union-3"). Examples of NICOLETTA's unauthorized use of the PPP funds are noted below:

- Approximately $55,000 towards the purchase of a 2020 Mercedes-Benz S560 valued at over $106,000 on or about August 10, 2020;

- Approximately $30,000 towards the purchase of a 2020 Ford Super Duty F-250 Platinum Edition valued at over $75,000 on or about August 24, 2020;

- Approximately $11,250 to purchase a Rolex on or about July 7, 2020;

Defendant's Initials      27

- At least $26,000 was paid to satisfy NICOLETTA's home mortgage arrearages satisfied on or about July 6, 2020, plus at least three subsequent monthly home mortgage payments of over $6,600; and

- Over $63,000 paid to install a pool at NICOLETTA's home.

In addition, NICOLETTA transferred or even personally delivered PPP funds to his conspirators. Specifically, in or about June 2020, NICOLETTA initiated two wires totaling approximately $537,000 to a purported property management company controlled by a known conspirator. He also delivered a large sum of cash to conspirator R.R. on at least one occasion.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials    28

13.    Certification

        The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

        DATED this 12th day of January 2021.

                                                        MARIA CHAPA LOPEZ
                                                        United States Attorney

_____                    for Kristen A. Fiore
Keith Nicoletta                                            Assistant United States Attorney
Defendant

_____                    for Jay G. Trezevant
Bjorn Brunvand                                           Assistant United States Attorney
Attorney for Defendant                              Chief, Economic Crimes Section